# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY C.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　Defendant. | Case No.: 18-cv-2633-LAB-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 13 and 15]** |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Plaintiff Kimberly C. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Commissioner of the Social Security Administration ("Commissioner"). (ECF No. 13-1 at 2).[2] The final administrative decision of the Commissioner denied Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act ("Title II") and for Supplemental Security Income under Title XVI of the Social Security Act ("Title XVI"). (AR 15).[3]

For the reasons set forth herein, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, Defendant's Cross Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** for further proceedings.

## I. BACKGROUND

Plaintiff was born on May 26, 1962. (AR 570). At the time the instant application was filed on August 21, 2014, Plaintiff was 52 years-old which categorized her as a person closely approaching advanced age. 20 C.F.R. §§ 404.1563, 416.963.

### A. Procedural History

On August 21, 2014, Plaintiff protectively filed an application for a period of Disability Insurance Benefits under Title II. (AR 15). On August 1, 2014, Plaintiff protectively filed an application for a period of Supplemental Security Income under Title XVI. (*Id.*). The application alleged a disability beginning February 11, 2013. (*Id.*). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*). An administrative

---

[2] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.
[3] "AR" refers to the Certified Administrative Record filed on August 26, 2019. (ECF No. 12).

2

hearing was held on May 23, 2017. (*Id.*). Plaintiff appeared and was represented by attorney Yong Young. (AR 34). Testimony was taken from Plaintiff, impartial medical expert Arnold Ostrov, and from impartial vocational expert Connie Hillary. (AR 32-67). On July 6, 2017, the ALJ issued a decision finding Plaintiff was not disabled from February 11, 2013 through the date of the decision and therefore denied Plaintiff's claim for benefits. (AR 25-26).

On July 6, 2017, Plaintiff sought review with the Appeals Council. (AR 1). On September 12, 2018, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the Commissioner's final decision in Plaintiff's case. (*Id.*). This timely civil action followed.

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla but less than a preponderance. . . ." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

3

18cv02625-JLS-MDD

1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusion, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Batson*, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

### **B. Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since February 11, 2013. (AR 18).

At step two, the ALJ found that Plaintiff had the following severe impairments: gastrointestinal system disorder including chronic rectal pain and migraine headaches (20 C.F.R. 404.1520(c) and 416.920(c)). (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 19) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

Next, after considering the entire record, the ALJ determined that

4

Plaintiff had the "residual functional capacity [(RFC)] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with the following limitations:

> sit for 6 hours in an 8-hour workday with normal breaks; the claimant can stand and/or walk for 6 hours in an 8-hour workday with normal breaks; the claimant can occasionally climb stairs and ramps; the claimant can never climb ladders, ropes and scaffolds; the claimant can frequently stoop, kneel, crouch, and crawl; the claimant must avoid even concentrated exposure to temperature extremes and vibrations; the claimant must avoid all exposure to hazards such as moving machinery and unprotected heights; and the claimant should have access to a bathroom within 100 yards from the work station.

(AR 19). The ALJ stated he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927. (AR 20).

The ALJ then proceeded to step four of the sequential evaluation process. He found Plaintiff was able to perform her past relevant work. (AR 25). For the purposes of his step four evaluation, the ALJ relied upon the testimony of the vocational expert ("VE"), and the ability of someone with the claimant's RFC, both as actually done and as generally done in the national economy. (*Id.*). The VE testified that Plaintiff's past relevant work included the following job: accounting clerk. (AR 61).

### C. Whether the ALJ Erred by Failing to Provide Specific and Legitimate Reasons for Rejecting Opinion of the Treating Physician

Plaintiff contends the ALJ failed to articulate specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Steven Horowitz, that her chronic rectal pain prevents her from sitting for more than fifteen minutes at a time and standing for long periods of time. (ECF No. 13-1 at 4; AR 568-75). Specifically, Plaintiff argues the ALJ's articulated

5

reasons for discounting Dr. Horowitz's opinion "are based on two isolated moments" with little relevance to Plaintiff's chronic rectal pain. (*See id.* at 10).

"'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Batson*, 359 F.3d at 1195 (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is contradicted by another doctor, an ALJ may not reject the treating physician's opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. *Id.*

Here, Dr. Horowitz's opinion is contradicted by other doctors. (AR 24). For example, Dr. Arnold Ostrow opined that Plaintiff could sit for eight hours with normal breaks and could stand and or walk for eight hours with normal breaks and Drs. P. Ombres, H. Amado, and M. Gleason opined that Plaintiff could work at a sedentary level. (AR 24-25). Accordingly, the ALJ must provide specific and legitimate reasons supported by substantial evidence to reject Dr. Horowitz's opinion. *See Lester*, 81 F.3d at 830.

The ALJ gave "less weight" to Dr. Horowitz's opinion because "the objective treatment records are not fully consistent with the less than sedentary functional capacity asserted by Dr. Horowitz." (AR 24). In particular, the ALJ cited Dr. Horowitz's progress notes from October 29, 2014, which indicated that "Norco helped," that Plaintiff was in "no acute distress," was well-nourished, and was fully oriented with good insight. (AR 24). The ALJ also cited notes from a February 9, 2016 physical examination

6

at a hospital, which showed that Plaintiff "had normal pupils; no evidence of hemorrhage on fundoscopic exam; intact exocular [sic] muscles in all four directions; normal and supple neck without rigidity; a non-tender gastrointestinal exam without rebound, guarding, or masses; normal movement in all four extremities; fully oriented in all spheres; and no apparent distress[.]" (*Id.*).

Many of the reasons cited by the ALJ are irrelevant or unrelated to Plaintiff's gastrointestinal system disorder including chronic rectal pain. (*See* AR 18). The fact that Plaintiff was well-nourished, fully oriented with good insight, had a normal and supple neck without rigidity, and normal movements in all four extremities are irrelevant to her chronic rectal pain. Even more irrelevant to her condition are notes regarding Plaintiff's eyes— i.e., that Plaintiff had normal pupils, no hemorrhaging on her fundoscopic exam and intact ocular muscles. Finally, the fact that Plaintiff had a non-tender gastrointestinal exam without rebound, guarding, or masses, on February 9, 2016, is not particularly relevant. On that date, Plaintiff went to the hospital complaining of a headache and visual disturbance and the focus was not on Plaintiff's chronic rectal pain. (AR 764-71). Accordingly, these are not specific and legitimate reasons to discount Dr. Horowitz's opinion. *See Elliott v. Comm'r of SSA*, No. CV-18-8201-PCT-JFM, 2019 U.S. Dist. LEXIS 111464, at *52-57 (D. Ariz. July 2, 2019) (finding the ALJ erred by affording little weight to a treating physician based on evidence in the medical evidence that was irrelevant).

The fact that Norco was helpful is also not a specific and legitimate reason to discount Dr. Horowitz's opinion. Effective control of an impairment with medication is a specific and legitimate reason to discount a treating physician's opinion. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006). However, Dr. Horowitz specifically indicated that while Norco helps, "the effect is quite limited and [Plaintiff] continues to have pain." (AR 520). The limited effect of Plaintiff's medication is consistently noted throughout the objective medical record. (*See* AR 298, 310, 343-56, 359, 378, 436, 448). As such, this reason is not supported by substantial evidence in the record. *See Lester*, 81 F.3d at 830.

Finally, the ALJ notes that Plaintiff was not in apparent or acute distress and that the "longitudinal objective treatment records" are inconsistent with Dr. Horowitz's opinion. (AR 24). The objective medical record shows that Plaintiff had a colonoscopy in 2011 that showed "significant internal/external hemorrhoids." (*See* AR 298). As a result, Plaintiff had a hemorrhoidectomy in March 2011. (AR 298, 301). "She had a very painful postoperative vent and things seemed to get worse at times. She was unable to have normal bowel movements [and] developed a rectocele." (AR 357). Three months later, in January 2012, the same surgeon performed a rectocele repair, which showed "poor relaxation and only small increase in the rectal pressure" with push attempts," indicating a "subtle type of pelvic floor discoordination." (AR 301, 357). Plaintiff "did not do well and things seemed to get worse" after the repair. (AR 357). "She began to develop some looseness of her bowels and difficulties with a uterine prolapse." (*Id.*). Accordingly, in March of 2012, Plaintiff had a hysterectomy, bilateral salpingo oophorectomy, and a prolapse repair. (AR 310, 357). Following this surgery, Plaintiff "had fairly profound postoperative pain and was unable to have normal bowel movements." (AR 357).

Since these surgeries, Plaintiff's major symptoms have been "pain and difficulty with evacuation." (AR 315). Specifically, "[s]he has difficulty sitting and is unable to sit and function on her job," has "some pain in the

8

lower quadrant of the abdomen . . . as well as the midline." (*Id.*). Plaintiff explains she has difficulty with evacuation and takes laxatives, uses enemas, and evacuates with her fingers daily. (*Id.*).

Plaintiff's primary care physician initially prescribed Vicodin, but later prescribed Norco which was more helpful. (AR 357). By December 6, 2012, Plaintiff was referred to Dr. Horowitz for further pain management issues because her pain was still "moderate to severe" even with Norco. (AR 356).

Plaintiff was also referred to a UCSD bowel program because she "had functional bowel movements but had some significant problems." (AR 357). UCSD performed a defecography "and found that although her sphincter opened and closed normally it simply did not open enough as it was surgically repaired too tightly." (*Id.*). Additionally, Biofeedback demonstrated that her "sphincter was moving but simply did not open enough to do the job." (*Id.*).

On September 17, 2012, a defogram demonstrated a mild degree of internal prolapse of the rectal mucosa, persistent narrowing of the anal canal that could represent spasm stricture, and possible internal hemorrhoids. (AR 309). On October 23, 2012, Plaintiff followed up with Dr. Mittal regarding the defogram. (*See* AR 312). Dr. Mittal stated that Plaintiff likely has pelvic floor discoordination or some narrowing as a result of hemorrhoidectomy and scarring. (*Id.*). He recommended "biofeedback therapy," "balloon dilation in case there was some scarring" and possibly "Botox injection[s]." (AR 312-13). On January 17, 2013, Dr. Mittal suspected that Plaintiff has "anal stenosis," although "there is no way to be 100% sure." (AR 314). He noted that Plaintiff had a "significant rectocele in spite of rectocele repair" and that she has narrowing of the anal canal." (*Id.*) This time, Dr. Mittal recommended "anal dilation." (*Id.*). However, on March 21, 2013, Dr. Mittal reported that the "dilation did not make any difference" and that Plaintiff "continues to be

9

quite distressed." (AR 315, 325-27). At the time, Plaintiff reported spending "2 to 3 hours in the toilet in the morning to have a bowel movement." (AR 315). Dr. Mittal referred Plaintiff to see Dr. Ramamoorthy. (AR 316).

On May 21, 2013, Dr. Johnathan Takei Unkart and attending physician Dr. Ramamoorthy noted that while "[a]natomically, [Plaintiff's] anus should pass stool," she "likely has a functional dysfunction that may lead to a mechanical obstruction." (AR 301). Drs. Unkart and Ramamoorthy noted that surgery would "likely not improve her symptoms" and "possibly worsen and pose significant complications," but suggested that a "trial of Botox injections" may be beneficial. (*Id.*). On August 13, 2013, Dr. Mittal questioned whether Plaintiff's Norco tablets were causing a narcotic bowel. (AR 322). To deal with Plaintiff's complaints of constant pain and being in the bathroom half the day, Dr. Mittal decided to give Plaintiff "a trial of Relistor" injections every other day for two months. (*Id.*).

By May of 2014, Plaintiff reported she has constantly been in the same amount of pain, even though it is "moderately controlled" with medication. (AR 468). In June of 2014, Plaintiff reported somewhat worsening rectal pain with cramping due to her "inability to relax her rectal sphincter muscle." (AR 466). She reported having to "liquify" her stool to have bowel movements. (*Id.*). By October 2014, Plaintiff was still experiencing pain. (AR 440). She reported spending the first six hours of her day in the bathroom "trying to get things going" and feels she is "slowly getting worse" even though "Norco helps" somewhat. (*Id.*). On February 23, 2015, Plaintiff reported that her rectal pain remains the same, although it is under "some control" with medication. (AR 448). On March 6, 2015, Dr. Horowitz opined that Plaintiff' is "unlikely to improve" because her "neurological system for the bowel has been deranged by multiple surgeries." (AR 575).

10

On August 26, 2016, Plaintiff reported severe symptoms of chronic rectal pain that "occur constantly." (AR 813). As of February 2017, Plaintiff was still complaining of chronic rectal pain. (AR 799). Based on the record, Plaintiff has consistently complained of chronic rectal pain that limits her daily activities and causes her to "live[] in the bathroom daily." (AR 298).

After years of treating Plaintiff, Dr. Horowitz opined that Plaintiff "does not have the physical wherewithal to tolerate activities at work as a result of her ongoing continuing fairly profound gastrointestinal issues and chronic pain in this regard." (AR 569-75). Pain is an inherently subjective symptom. *See Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Neither the existence, nor severity of pain can be objectively measured or verified. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). By discounting Dr. Horowitz's opinion as inconsistent with Plaintiff's longitudinal objective treatment records and failure to present in notable pain, the ALJ improperly required objective evidence of pain—a symptom which is not susceptible to objective measurement. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

Based on the foregoing, the ALJ did not articulate specific and legitimate reasons to discount Dr. Horowitz's opinion regarding sitting for more than fifteen minutes at a time and standing for long periods of time. (*See* AR 24).

## D. Remand for Further Administrative Proceedings

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand pursuant to sentence four of § 405(g) for further proceedings is warranted where additional administrative

11

proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand pursuant to sentence six for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

As noted above, the ALJ erred in discounting the opinion of Plaintiff's treating physician, relying on unrelated or irrelevant reasons, reasons unsupported by substantial evidence, or reasons based on a misunderstanding of Plaintiff's condition. "The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594 (internal quotation marks and citation omitted). On remand, should the ALJ determine that Dr. Horowitz's opinion is entitled to greater weight, there is a reasonable possibility that the residual functional capacity assessment may change. Accordingly, the matter must be remanded for further proceedings in accordance with these findings.

## III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, Defendant's Cross Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **December 27, 2019**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 3, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: December 12, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge